IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAVINO BRAXTON,** | : | CIVIL ACTION NO. 4:23-CV-89 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATES OF AMERICA,** *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

This is a prisoner civil rights case in which plaintiff, Savino Braxton, alleges tort claims against the United States pursuant to the Federal Tort Claims Act ("FTCA") and civil rights claims pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) against individual defendants employed by the United States Bureau of Prisons ("BOP"), the United States Department of Justice ("DOJ"), and several United States District Courts. This court previously dismissed with prejudice all claims against our colleague, Chief United States District Judge Matthew W. Brann, finding that Chief Judge Brann is entitled to absolute judicial immunity from Braxton's claims. We have now screened Braxton's remaining claims pursuant to 28 U.S.C. § 1915A and conclude that they fail to state a claim upon which relief may be granted. Braxton's negligence claims against defendants Schindler and the United States arising from Schindler's alleged failure to diagnose Braxton's multiple myeloma will be dismissed without prejudice. All other claims will be dismissed with prejudice.

I.      **Factual Background & Procedural History**

Braxton filed his complaint on January 9, 2023, and the court received and docketed the complaint on January 17, 2023. (Doc. 1). The complaint raises FTCA and <u>Bivens</u> claims based on defendants' allegedly inadequate response to the COVID-19 pandemic.

According to the complaint, Braxton was confined in FCI-Danbury in Danbury, Connecticut in March 2020 when he contracted COVID-19. (<u>Id.</u> at 14). Defendant Schindler, a doctor in the prison, treated him for the virus. (<u>Id.</u>) Upon examining Braxton, Schindler allegedly determined that his COVID-19 infection had exacerbated a dormant case of sarcoidosis. (<u>Id.</u> at 15). Schindler prescribed him Prednisone to treat the rashes and inflammation caused by the sarcoidosis. (<u>Id.</u>) The Prednisone temporarily relieved Braxton's symptoms, but he allegedly has continued to experience rashes since that time. (<u>Id.</u>)

On March 26, 2020, defendant William Barr, who was then serving as United States Attorney General, allegedly issued a memorandum directing BOP facilities to consider transferring some inmates to home confinement in response to the pandemic. (<u>Id.</u>) The next day, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which granted the BOP greater authority to transfer inmates to home confinement. (<u>Id.</u> at 15-16). Braxton requested that the BOP transfer him to home confinement pursuant to the CARES Act and additionally filed a motion for compassionate release in the court that sentenced him to his federal sentence, the United States District Court for the District of Maryland. (<u>Id.</u> at 18). Defendant United States District Judge James K. Bredar

2

allegedly granted the motion in part and reduced the total term of Braxton's sentence, but did not release him to home confinement. (Id.)

In October 2020, Braxton was scheduled to be transferred from FCI-Danbury to USP-Lewisburg in Lewisburg, Pennsylvania. (Id. at 19). As part of this transfer, Braxton was temporarily housed in Brooklyn Metropolitan Detention Center ("MDC-Brooklyn") from October 2020 to December 2020. (Id. at 20). Braxton was placed in quarantine when he arrived in the prison because several inmates who were transported with him tested positive for COVID-19. (Id.) Braxton filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of New York during his confinement in MDC-Brooklyn. (Id. at 22).

Braxton was transferred to USP-Lewisburg in December 2020. (Id. at 9). He was placed in quarantine upon arriving at the prison and was released from quarantine in January 2021. (Id. at 22). Braxton's habeas corpus petition in the Eastern District of New York was dismissed as moot in April 2020 by defendant United States District Judge Margo K. Brodie. (Id. at 23).

In May 2021, Braxton began experiencing symptoms that he attributed to long-term complications from his March 2020 COVID-19 infection. (Id. at 24). USP-Lewisburg's head physician, Dr. Lee diagnosed him with long COVID and multiple myeloma. (Id.) Braxton alleges that defendant Schindler "knew or should have known of the multiple myeloma if it existed" when she treated Braxton in March 2020. (Id.)

Braxton requested transfer to home confinement shortly after his multiple myeloma diagnosis, but defendant Spaulding, the warden at USP-Lewisburg,

3

denied the request. (Id. at 24). Braxton then filed a petition for writ of habeas corpus in this district, which was assigned to Chief Judge Brann. (Id.) Braxton submitted an additional request for release to home confinement in February 2022. (Id. at 25). The BOP approved the request in March 2022, but the approval was allegedly overturned by the BOP's central office in April 2022. (Id. at 25-26).

The complaint asserts claims for deliberate indifference to a serious medical need, civil conspiracy, and negligence. (Id. at 26-35). The claims are based on defendants' alleged failure or refusal to transfer Braxton to home confinement. (Id.) We also liberally construe the complaint as asserting that defendant Schindler provided inadequate medical care to Braxton to treat his COVID-19 and multiple myeloma. (See id.) The complaint names as defendants: (1) the United States; (2) Judges Bredar, Brodie, and Brann; (3) former Attorney General Barr and current Attorney General Merrick Garland; and (4) BOP officials Schindler, Spaulding, Michael Carvajal, Diane Easter, H. Tellez, and Collette Peters. (Id. at 1). The complaint does not assert any claims against Lee and does not name him as a defendant. The complaint seeks damages, injunctive relief, and declaratory relief. (Id. at 35-36).

Braxton filed a motion for discovery and a motion to appoint counsel on the same day as his complaint.[1] (Docs. 3-4). Braxton additionally filed an incomplete application to proceed *in forma pauperis*. (Doc. 2). The Clerk of Court issued a 30-day administrative order on January 18, 2023, stating that the case would be

---

[1] These motions are addressed in separate orders on the date of this opinion.

4

dismissed without prejudice if Braxton failed to pay the requisite filing fee or file a complete application for leave to proceed *in forma pauperis* within 30 days. (Doc. 6).

The court conducted an expedited review of Braxton's claims against Chief Judge Brann pursuant to Standing Order 19-06 on January 18, 2023, to determine whether transfer to another district was necessary.[2] (Doc. 7). The court determined that Chief Judge Brann is entitled to absolute judicial immunity, dismissed the claims against him with prejudice, and declined to transfer the case. (Id.) Braxton moved for reconsideration on February 6, 2023. (Doc. 8).

After receiving an extension of time from the court, Braxton moved for leave to proceed *in forma pauperis* on April 11, 2023. (Doc. 13). The court denied the motion on April 12, 2023, finding that Braxton had sufficient funds to pay the filing fee. (Doc. 16). The court ordered him to pay the fee within 21 days or the case would be dismissed without prejudice. (Id.) Braxton filed a response on May 2, 2023 in which he represented that he was recently released to home confinement

---

[2] Standing Order 19-06, which governs procedures for assignment of cases that have been filed against judges of this district, provides as follows:

> [A] civil action filed against a judge or magistrate judge in the Middle District of Pennsylvania, shall be assigned to a District Court Judge in a vicinage other than where the named defendant judge or magistrate judge maintains his or her permanent duty station. If the assignee judge determines that the suit is frivolous or that judicial immunity is plainly applicable, the assignee judge need not recuse. If the assignee judge does not find the suit to be frivolous or that judicial immunity is a complete defense, then the assignee judge shall notify the Harrisburg Division Supervisor and the Scranton Chief Deputy Clerk, who shall follow the Local Policy for intra-circuit assignment to a judge outside of the Middle District of Pennsylvania.

M.D. PA. STANDING ORDER 19-6 (Jun. 24, 2019).

5

and that he needs the $10,000 in his account to pay basic living expenses. (Doc. 17). Braxton accordingly requested imposition of an alternative payment plan in which he would not be required to pay the filing fee until after he obtained employment. (Id.) The court denied this request on May 19, 2023 and ordered payment of the filing fee by June 6, 2023. (Doc. 18). Braxton informed the Clerk's office by telephone on June 6, 2023 that he had mailed the filing fee to the court, and the court received the filing fee on June 8, 2023. (Doc. 19). Having now received the fee, the court performs its mandatory screening of Braxton's complaint pursuant to 28 U.S.C. § 1915A. The court will dismiss the complaint.

## II. Legal Standard

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. § 1915A.[3] The court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious,

---

[3] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
   **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
   **(2)** seeks monetary relief from a defendant who is immune from such relief.

6

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See id.[4]

### III. Discussion

#### A. Claims Against Judicial Defendants

We will first consider Braxton's motion for reconsideration of the dismissal of all claims against Chief Judge Brann.  We concluded that Chief Judge Brann is entitled to absolute judicial immunity because Braxton's claims against him are based entirely on actions that he took in his judicial capacity by denying Braxton's claims for habeas corpus relief and release to home confinement.  (Doc. 7).  Braxton argues that reconsideration is warranted because Chief Judge Brann "waived" his judicial immunity by "abandon[ing] his judicial role" and taking part in the "scheme to keep Mr. Braxton in federal prison."  (Doc. 8).

This argument is frivolous.  It is clear from the face of the complaint and Braxton's motion for reconsideration that he seeks relief against Chief Judge Brann solely based on unfavorable decisions that Chief Judge Brann issued against him.  Chief Judge Brann is entitled to judicial immunity from these claims.  Braxton's "allegations of bad faith or malice" are not sufficient to overcome this immunity.  Mireles v. Waco, 502 U.S. 9, 11 (1991).  The motion for reconsideration is denied.

---

[4] Although Braxton was released to home confinement after filing this case, the court must still conduct a screening review pursuant to Section 1915A.  Civil cases are subject to screening pursuant to Section 1915A if the plaintiff is incarcerated at the time he files the case.  Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001) (citing Johnson v. Hill, 965 F. Supp. 1487, 1488 n.2 (E.D. Va. 1997)).

We will dismiss the claims against Judges Bredar and Brodie on the same basis. Braxton seeks relief from these defendants solely based on unfavorable decisions issued in their judicial capacity. (See Doc. 1 at 18, 23). Judges Bredar and Brodie are immune from such claims. Mireles, 502 U.S. at 11.

### B.     Home Confinement Claims

Braxton's claims that defendants Barr, Garland, Schindler, Spaulding, Carvajal, Easter, Tellez, and Peters violated his civil rights by failing or refusing to transfer him to home confinement during the COVID-19 pandemic will be dismissed for lack of jurisdiction. Decisions of whether to transfer prisoners to home confinement under the CARES Act are left to the exclusive discretion of the BOP. See, e.g., Hussain v. Warden Allenwood FCI, No. 22-1604, 2023 WL 2643619, at *2 (3d Cir. Mar. 27, 2023) (nonprecedential); United States v. Muskey, No. 22-1564, 2023 WL 1462827, at *2 n.2 (3d Cir. Feb. 2, 2023) (nonprecedential); United States v. Granado, No. 22-2456, 2022 WL 17974458, at *2 n.3 (3d Cir. Dec. 28, 2022) (nonprecedential); Olson v. Warden Schuylkill FCI, No. 21-2436, 2022 WL 260060, at *2 (3d Cir. Jan. 27, 2022) (nonprecedential);[5] Cuney v. Spaulding, No. 1:23-CV-200, 2023 WL 2188707, at *1 (M.D. Pa. Feb. 23, 2023) (Conner, J.) (collecting cases).

---

[5] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

### C.     Medical Care Claims Against Schindler

Braxton's sole remaining civil rights claims against an individual defendant are his inadequate medical care claims against defendant Schindler.  With one exception, we will dismiss these claims with prejudice as untimely.

District courts may *sua sponte* dismiss complaints as untimely pursuant to the screening provision of 28 U.S.C. § 1915A if the untimeliness is clear from the face of the complaint or the court has given the plaintiff notice and an opportunity to respond with respect to the timeliness issue.  See, e.g., Jackson v. Rodriguez, 728 F. App'x 78, 79 (3d Cir. 2018) (nonprecedential); McPherson v. United States, 392 F. App'x 938, 943 (3d Cir. 2010) (nonprecedential); Haggard v. Mitkowski, No. 1:22-CV-1881, 2022 WL 17812445, at *4 (M.D. Pa. Dec. 19, 2022) (Conner. J.).  Civil rights claims brought by inmates in Pennsylvania are governed by Pennsylvania's two-year statute of limitations for personal injury actions.  Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).  The limitations period begins to run on the date the plaintiff knew, or should have known, of the injury upon which the claim is based. Id. (citing Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998)).

It is clear from the face of Braxton's complaint that all but one of his claims against Schindler are untimely.  The complaint alleges that Schindler treated Braxton in March 2020, but Braxton did not file suit in this case until nearly three years later on January 9, 2023.  No tolling of the limitations period can render these claims timely.  Although the limitations period for a Section 1983 action is statutorily tolled while a prisoner plaintiff attempts to exhaust administrative remedies, Pearson v. Sec'y Dep't of Corrs., 775 F.3d 598, 603 (3d Cir. 2015), the

complaint alleges that Braxton sought administrative remedies on May 1, 2022, over a month after the limitations period for his claims against Schindler expired. (See Doc. 1 at 2). Tolling cannot restart a limitations period that has already expired. See Johnson v. Hendricks, 314 F.3d 159, 161-62 (3d Cir. 2002).

The only claim against Schindler that is not facially untimely is Braxton's claim that Schindler "knew or should have known of the multiple myeloma if it existed" when she treated him in March 2020. (Id.) Because the limitations period for a civil rights claim begins when the plaintiff knew or should have known of his injury, Wisniewski, 857 F.3d at 157, it appears from the face of the complaint that the limitations period for this claim began when Braxton was diagnosed with multiple myeloma in May 2021. Hence, we cannot dismiss the claim as untimely and we turn our attention to whether the claim is cognizable under Bivens.

### D. Remaining Bivens Claim Against Schindler

In Bivens, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. See Bivens, 403 U.S. at 397. In over 50 years since Bivens was decided in June 1971, the Court has extended Bivens only twice: first, to a claim for sex discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

The Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. 120 (2017) sets forth a two-part test for determining whether a prospective Bivens claim may proceed.  First, courts must ascertain whether the case presents a "new context."  See id. at 138.  If the case differs "in a meaningful way" from previous Bivens cases decided by the Supreme Court, "then the context is new."  Id. at 139.  And the meaning of "new context" is "broad."  See Hernandez v. Mesa, 589 U.S. __, 140 S. Ct. 735, 743 (2020).  Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the Bivens remedy.  See id.  This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  See Egbert v. Boule, 596 U.S. __, 142 S. Ct. 1793, 1803 (2022) (quoting Abbasi, 137 S. Ct. at 1858).  If a court concludes that "even a single reason" exists to pause "before applying Bivens in a new context or to a new class of defendants," then special factors counseling hesitation exist and a Bivens remedy does not lie.  See id. (quoting Hernandez, 140 S. Ct. at 743) (internal quotation marks omitted).

The Court's decision in Egbert, 142 S. Ct. at 1793, reemphasizes that the continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new Bivens cause of action is "a disfavored judicial activity."  See Egbert, 142 S. Ct. at 1803 (quoting Abbasi, 137 S. Ct. at 1857; Hernandez, 140 S. Ct. at 742-43).  Egbert clarifies that the two-step process laid out in Abbasi "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  See id. at 1803.  In other words: if there is "*any* rational reason (even one) to think that

*Congress* is better suited" to determine the propriety of a cause of action, then a Bivens action cannot proceed.  See id. at 1805.  The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even *potentially* yes, the plaintiff cannot recover under Bivens.  See id. (quoting United States v. Stanley, 483 U.S. 669, 681 (1987)).  Mindful of Egbert's emphasis on the presence of special factors, we proceed with Abbasi's two-step analysis.

   1.   **New Context**

Only one of the three cases in which the Supreme Court has recognized a Bivens claim, Carlson, is potentially relevant to the instant matter.[6]  In Carlson, the Court recognized an implied damages remedy under Bivens when prison officials' failure to provide medical care led to a prisoner plaintiff's death.  See Carlson, 446 U.S. at 16, 25; see also Egbert, 142 S. Ct. at 1802.

---

[6] We have also considered the potential relevance of Farmer v. Brennan, 511 U.S. 825 (1994).  Although Egbert, Hernandez, and Abbasi do not mention Farmer as one of the cases in which the Court recognized a Bivens remedy, our court of appeals has held, post-Abbasi, that Farmer recognized an implied Bivens remedy for claims that prison officials were deliberately indifferent to a risk that an inmate would be assaulted by other inmates.  See Bistrian v. Levi, 912 F.3d 79, 90-91 (3d Cir. 2018).  The Supreme Court's more recent decisions in Hernandez and Egbert and our court of appeals' decision in Dongarra v. Smith, 27 F.4th 174 (3d Cir. 2022) cloud this conclusion.  See Davis v. FCI-Schuylkill, No. 1:22-CV-1270, 2022 WL 4348462, at *3 n.3 (M.D. Pa. Sept. 19, 2022) (Conner, J.).  Nevertheless, Dongarra did not overrule Bistrian because Dongarra is not an en banc decision.  See, e.g., Bracey v. Superintendent Rockview SCI, 986 F.3d 274, 290 n.14 (3d Cir. 2021).  Hence, we continue to treat Bistrian as binding precedent and have considered its relevance to the instant case.  We find that the instant case's allegation of deliberate indifference to a serious medical need is notably different from the deliberate indifference to inmate assault alleged in Farmer.  See Davis, 2022 WL 4348462, at *3.

Like Carlson, the instant claim arises from defendant Schindler's allegedly deficient medical care. But we find that this case is notably different from Carlson. In Carlson, defendants repeatedly failed to provide any medical care to the plaintiff, which eventually led to his death. Carlson, 446 U.S. at 17, 20. Here, by contrast, the complaint alleges that Schindler was providing regular treatment to Braxton for COVID-19 and sarcoidosis, but that she should have discovered that he also had multiple myeloma. (See Doc. 1 at 14, 25). This allegedly negligent failure to diagnose a condition is categorically different from the intentional actions on which Carlson based its extension of the Bivens remedy. See Carlson, 446 U.S. at 20 ("In the absence of a contrary expression from Congress, § 2680(h) thus contemplates that victims of the kind of *intentional wrongdoing* alleged in this complaint shall have an action under FTCA against the United States as well as a Bivens action against the individual officials alleged to have infringed their constitutional rights." (emphasis added)).

### 2. Special Factors

Having concluded that Braxton's claim presents a new context, we must determine whether "there are any special factors that counsel hesitation" in extending Bivens. See Hernandez, 140 S. Ct. at 743 (internal quotation marks and alterations omitted) (quoting Abbasi, 137 S. Ct. at 1857). If a court "ha[s] reason to pause before applying Bivens in a new context or to a new class of defendants," then special factors counseling hesitation exist. See id.

The Supreme Court has recognized that "when alternative methods of relief are available, a Bivens remedy usually is not." See Abbasi, 137 S. Ct. at 1863. The

13

alternative remedy need not "afford rights to participation or appeal," because a court should defer to congressional or executive choices in erecting a remedial process, rather than conduct its own independent assessment of government procedures. See Egbert, 142 S. Ct. at 1806. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'" Id. at 1804 (citing Abbasi, 137 S. Ct. at 1858.

The Bureau of Prisons' administrative remedy program provides an alternative remedy for Braxton to pursue his claim. Mack v. Yost, 968 F.3d 311, 321 (3d 2020). Although Braxton could not obtain money damages through the administrative remedy program, see id., the fact that the alternative remedy "do[es] not provide complete relief" is immaterial. Egbert, 142 S. Ct. at 1804. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" Id. (quoting Bush v. Lucas, 462 U.S. 367, 388 (1983)). Having carefully considered this question, and mindful of the Supreme Court's direction that expanding the Bivens remedy to new contexts is a "disfavored judicial remedy," See Egbert, 142 S. Ct. at 1803 (quoting Abbasi, 137 S. Ct. at 1857), we conclude that Congress is better equipped to determine the contours of a damages remedy than the courts. Braxton's remaining Bivens claim will therefore be dismissed.

**E.     Tort Claims**

Finally, we consider whether Braxton pleads a negligence claim under Pennsylvania law based on Schindler's alleged failure to diagnose his multiple myeloma. To state a claim for negligence under Pennsylvania law, a plaintiff must allege that (1) defendant owed plaintiff a duty of care; (2) defendant breached the duty; (3) the breach was the proximate cause of plaintiff's injury; and (4) the breach caused plaintiff damages. Brewington *ex rel.* Brewington v. City of Philadelphia, 199 A.3d 348, 355 (Pa. 2018).

We find that Braxton has failed to plead negligence. Although the complaint plausibly pleads that Schindler owed Braxton a duty of care and breached that duty, there is no allegation that her failure to diagnose the illness caused Braxton any harm. It appears from the four corners of the complaint that Braxton received treatment for the multiple myeloma from Lee in May 2021. There is no allegation as to how the delayed treatment caused by Schindler's alleged failure to diagnose the illness caused Braxton harm.

We will dismiss Braxton's FTCA claim against the United States for the same reason.[7] The FTCA provides that the United States may be held liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Braxton has failed to plead that any employee of

---

[7] The United States is the only proper defendant to an FTCA claim. CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008). To the extent Braxton intends to assert FTCA claims against individual defendants, those claims are dismissed with prejudice.

the United States has committed a tort.  The FTCA claim against the United States accordingly fails to state a claim upon which relief may be granted.

**F.     Amendment**

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips v. Allegheny Cty., 515 F.3d 224, 245 (3d Cir. 2008).  We will deny leave to amend as futile with respect to all claims other than Braxton's negligence claims against defendants Schindler and the United States arising from Schindler's alleged failure to diagnose Braxton's multiple myeloma because those claims fail as a matter of law.

**IV.     Conclusion**

We will dismiss Braxton's negligence claims against defendants Schindler and the United States arising from Schindler's alleged failure to diagnose Braxton's multiple myeloma without prejudice and dismiss all other claims with prejudice. Braxton will be granted leave to file an amended complaint limited to the aforementioned negligence claims.  We will also deny Braxton's motion for reconsideration.  An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     June 23, 2023